## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRIAN DOMBAL, Individually and On Behalf of All Others Similarly Situated, | Case No. _____ |
| Plaintiff, | **FLSA 28 U.S.C § 216(b) MULTI-PLAINTIFF ACTION** |
| v. | |
| TRINITY HEALTH CORPORATION, | |
| Defendant. | **JURY DEMANDED** |

## **INTRODUCTION**

1.     Plaintiff brings this action on behalf of himself and other similarly situated individuals who have worked for Trinity Health Corporation ("Defendant" or "Trinity Health"),  in patient care roles such as nursing staff, nurse aides, nurse assistants, and other non-exempt hourly patient care positions[1] and have been subject to Defendant's policy and practice of deducting time from recorded hours for meal periods and/or requiring patient care staff to work through their unpaid meal periods without pay regardless of if the break time was automatically deducted. Throughout the relevant time period, Plaintiff and similarly situated patient care staff ("putative Opt-in Plaintiffs") have been denied payment for all hours worked, including overtime in violation of the Fair Labor Standards Act

---

[1] While the precise job titles may differ, Plaintiff hereinafter uses the term "patient care staff" interchangeably in referencing any of these similarly situated employees.

("FLSA").

2.    Defendant does not provide bona fide meal periods for their patient care staff. Patient care staff who work for Defendant are required to remain responsible for patient care throughout their shift and are expected to perform duties while "off-the-clock." Up until approximately June of 2024, instead of making patient care staff clock out for their meal periods, and then clock back in at the end of a meal period, Defendant assumed patient care staff were able to find a 30-minute block of time to enjoy a bona fide meal period and therefore automatically deducted 30 minutes from patient care staffs' shifts for a meal period. However, patient care staff did not (and do not) typically find time for their meal periods, and when they do, patient care staff remain on duty and are continuously subject to interruption during mealtime to perform patient care duties.

3.    After June of 2024, Trinity began forcing patient care staff to clock out for ostensible meal "breaks." or not. However, patient care staff did not (and do not) typically find time for their meal periods, and when they do, patient care staff remain on duty and are continuously subject to interruption during mealtime to perform patient care duties. Moreover, Defendant strongly discourages Plaintiff and patient care staff from reporting any missed and/or interrupted meal breaks because Trinity does not want to compensate them for said time.

4.    Defendant's policies and practices result in patient care staff being

responsible for patient care throughout their shift, even when they attempt to have a bite to eat.

5.      Defendant's policies and practices deny patient care staff wages due under the FLSA. Under these policies and practices, Defendant requires non-exempt patient care staff to remain on duty and subject to interruptions during their meal breaks. Patient care staff are thus denied pay for work performed during these on-duty meal periods.

6.      Defendant, including the 101 hospitals across the nation that are under its control, continues to violate the FLSA by knowingly and willfully permitting Plaintiff and patient care staff to perform work and/or remain on duty during meal breaks, subjecting them to interruptions during those times. Defendant received value from the work performed by Plaintiff and patient care staff during their meal periods and while "off-the-clock" without compensating them for their services. Defendant willfully, deliberately, and voluntarily failed to pay Plaintiff and patient care staff for work performed.

7.      Defendant's conduct violated and continues to violate the FLSA because of the mandate that non-exempt employees, such as Plaintiff and patient care staff, be paid at one and one-half times their regular rate of pay for all hours worked in excess of forty within a single workweek. *See* 29 U.S.C. § 207(a).

8.      Therefore, Plaintiff files this action to recover on behalf of himself and

others similarly situated all unpaid wages, liquidated damages, other damages owed to them under the FLSA, and he seeks to promptly send notice of this action to those similarly situated pursuant to 29 U.S.C. § 216(b) in order to inform them of their rights and to remedy the sweeping practices which Defendant has integrated into its time tracking and payroll policies and which have deprived Plaintiff and others similarly situated of their lawfully-earned wages.

## SUBJECT MATTER JURISDICTION AND VENUE

9.      This court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 as this case is brought under the laws of the United States, specifically the FLSA, 29 U.S.C. § 201, *et seq.*

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391. Defendant resides in this judicial district and is subject to personal jurisdiction here, and Defendant's corporate policies, such as overtime and meal break policies, were promulgated in this District.

## PARTIES

11.     Plaintiff Brian Dombal is an individual residing in Wethersfield, Connecticut. He is employed as a Cardiac IC nurse by Defendant at its Saint Francis Hospital and Medical Center in Hartford, Connecticut. Mr. Dombal's Consent to Join this lawsuit is attached hereto as **Exhibit A**.

12.     Plaintiff seeks to send notice of this action to others similarly situated,

who are classified as people who are or who have been employed by Defendant in non-exempt patient care roles, such as nursing staff, nurse aides, nurse assistants, and other similar hourly non-exempt patient care positions at in the United States within the three years preceding the filing of this Complaint.

13.     Upon information and belief, Defendant Trinity Health Corporation is an Indiana nonprofit corporation, with its headquarters in Livonia, Michigan. Trinity Health is a health system operating approximately 93 hospitals in 23 states. Trinity Health may be served with process by serving its Registered Agent for service of process: The Corporation Company, located at 40600 Ann Arbor Road, E Ste 201, Plymouth, Michigan, 48170

14.     Defendant owns and operates hospitals and clinics, including the Saint Francis Hospital and Medical Center where Plaintiff worked, throughout the United States.

15.     At all material times, Defendant has been an employer within the meaning of the FLSA under 29 U.S.C. § 203(d).

16.     At all material times, Defendant has been an enterprise within the meaning of the FLSA under 29 U.S.C. § 203(r).

17.     Plaintiff and putative Opt-in Plaintiffs were and are employees of Defendant within the meaning of 29 U.S.C. § 203(e).

18.     At all material times, Defendant has been an enterprise in commerce or

in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA because it had and continues to have employees engaged in commerce. 29 U.S.C. § 203(s)(1).

19.     Defendant acted as joint employers of Plaintiff and Opt-in Plaintiffs Defendant jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of Plaintiff and Opt-in Plaintiffs along with the facilities where they worked.

20.     Defendant had, and continues to have, an annual gross business volume of not less than $500,000, thereby exceeding the statutory standard. 26 U.S.C. § 203(s)(1)(A)(ii).

21.     In addition to Plaintiff, Defendant has employed numerous other employees, who like Plaintiff, are patient care staff engaged in interstate commerce. Further, Defendant is engaged in interstate commerce since it order supplies across state lines, conduct business deals with merchants across state lines, and process patient credit cards with banks in other states.

22.     At all material times, Plaintiff and patient care staff were employees who engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

## FACTS

23.     Defendant Trinity Health operates a network of hospitals and clinics

that provide healthcare services across the United States, including medical care facilities located in Alabama, California, Connecticut, Delaware, Florida, Georgia, Idaho, Illinois, Indiana, Iowa, Maryland, Massachusetts, Michigan, Nebraska, New Jersey, New York, North Carolina, Ohio, Oregon, Pennsylvania, and South Dakota.

24.     Saint Francis Hospital and Medical Center is one of the hospitals within Defendant's healthcare network, and is owned and operated by Trinity Health Corporation.

25.     Defendant jointly employs thousands of hourly non-exempt workers similarly situated to Plaintiff.

26.     Defendant's payroll policy and practice does not compensate hourly-paid patient care staff for work performed during meal periods. Defendant's automatic time deduction policy and practice deducts 30 minutes from patient care staff shifts for a meal period based on the assumption that patient care staff are able to find a 30-minute block of time to enjoy a bona fide meal period. However, in practice, patient care staff involved in patient care are not permitted to take a 30-minute uninterrupted and bona fide meal period or rest breaks due to the demands of their jobs during the majority of their shifts. In the rare instances where they attempt a meal break, they remain on duty in that they are interrupted with patient care tasks doctors, patients' families, other patient care staff and hospital staff, to attend to the normal demands of the job, and otherwise respond to emergencies.

This policy and/or practice applies to all hourly-paid, non-exempt patient care staff who are responsible for patient care.

27.    Even after Defendant's automatic time deduction policy ended, patient care staff did not (and do not) typically find time for their meal periods, and when they do, patient care staff remain on duty and are continuously subject to interruption during mealtime to perform patient care duties.

28.    Plaintiff worked as a non-exempt Cardiac IC nurse (and, previously, EKG Technician) for Defendant since November of 2021, and his pay is roughly $39.75 per hour. His job duties require him to assist in emergency situations, assisting with patient assessments, examinations and treatments, and other patient care tasks.

29.    Patient care staff were and are employed by Defendant and performed work materially similar to Plaintiff.

30.    Plaintiff and patient care staff reported to a hospital or clinical facility owned, operated, or managed by Defendant to perform their jobs.

31.    Plaintiff and patient care staff performed their jobs under Defendant's supervision and using materials and technology approved and supplied by Defendant.

32.    Plaintiff and patient care staff were required to follow and abide by common work, time, pay, meal and rest break, and overtime policies and procedures

in the performance of their jobs.

33.    At the end of each pay period, Plaintiff patient care staff received wages from Defendant that were determined by common systems and methods that Defendant selected and controlled.

34.    Defendant paid Plaintiff and patient care staff on an hourly rate basis.

35.    Plaintiff worked more than forty hours in at least one workweek during the three years before this Complaint was filed. Plaintiff typically worked more than 40 hours of clocked-in time in a workweek.

36.    Upon information and belief, other patient care staff worked more than forty hours in at least one workweek during the three years before this Complaint was filed.

37.    When Plaintiff and patient care staff worked more than forty hours in a workweek, Defendant failed to pay them one and one-half times their regular hourly rate for all hours worked due to Defendant's failure to include time worked "off-the-clock" including during meal periods in the total hours of worked in a given work week. This unpaid meal period time is compensable under the FLSA because (1) Plaintiff and patient care staff were not completely relieved of their duties, (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, or (3) they entirely skipped meal periods due to work demands.

38.    Throughout the relevant time period, Plaintiff and patient care staff members were subjected to Defendant's time, pay, meal break, and overtime policies and practices. Plaintiff and patient care staff routinely worked their entire shift, were subject to interruptions during attempted meal breaks, and in fact were interrupted or denied meal breaks on a regular basis.

39.    Defendant expected, required, suffered, and/or permitted Plaintiff and patient care staff to be available to work during their entire shifts, even during any attempted meal or rest breaks. This time constitutes compensable time under the FLSA which requires that employers compensate employees for all time worked.

40.    Beyond Defendant's failure to authorize or permit meal breaks, patient care staff's schedules were too busy, patient care demands were too high, and Defendant's pressure to complete job assignments while being understaffed was too constant, for patient care staff to take compliant meal breaks.

41.    As a result, the time worked by Plaintiff and other patient care staff during their meal periods often goes unrecorded and uncompensated.  This violates the FLSA when it occurs during weeks in which Plaintiff and patient care staff work 40 hours in a workweek.

42.    Defendant has employed hundreds, if not thousands, of people similarly situated to Plaintiff during the three-year period prior to the filing of this Complaint.

43.    Defendant's method of paying Plaintiff and patient care staff was

willful, and was not based on a good faith and reasonable belief that their conduct complied with either the FLSA.

44.    Defendant's common course of wage-and-hour abuse includes routinely failing to maintain true and accurate records of the hours worked by patient care staff. In particular, Defendant failed to record hours that Plaintiff and putative Opt-in Plaintiffs worked during missed meal breaks.

45.    Defendant's conduct was willful, carried out in bad faith, and caused significant damages to non-exempt hourly employees in an amount to be determined at trial.

## FLSA COLLECTIVE ACTION ALLEGATIONS

46.    Plaintiff brings this Complaint as a collective action pursuant to 29 U.S.C. § 216(b) and seeks to promptly send notice to the case to the group of similarly situated employees:

> **all current and former hourly, non-exempt employees, responsible for patient care, including but not limited to nursing staff, nurses, nursing aides, nursing assistants, technicians, or other non-exempt hourly employees providing patient care at any of their hospitals across nation during the time period three years prior to the filing of the original Complaint until resolution of this action (the "Collective").**

47.    Defendant has not and do not compensate these employees for "off-the-clock" work as described above, including work performed during unpaid meal

breaks.

48.     Per 29 U.S.C. § 216(b), this action may be brought as an "opt-in" collective action for the claims asserted by Plaintiff because his claims are similar to the claims possessed by the putative Opt-in Plaintiffs.

49.     Plaintiff has knowledge that putative Opt-in Plaintiffs were denied compensation for time worked, including meal breaks worked or interrupted and "off-the-clock" work. In addition, Plaintiff has knowledge that putative Opt-in Plaintiffs were also been denied overtime pay for this work and would therefore likely to opt into this action if provided a notice of their rights to do so, together with a clear statement that opting to join such an action would not result in termination or other forms of retaliation.

50.     Plaintiff is similarly situated to putative Opt-in Plaintiffs. Like Plaintiff, Defendant subjected putative Opt-in Plaintiffs to Defendant's common practice, policy, or plan of refusing to pay overtime for all work performed in clear violation of the FLSA.

51.     Other patient care staff similarly situated to Plaintiff work, or have worked, for Defendant but were not paid overtime at the rate of one and one-half times their regular hourly rate when those hours exceeded forty per workweek for meal breaks during which they were not completely relieved of their duties that were interrupted, interruptible, or entirely missed due to work demands.

52.     Although Defendant permitted and/or required putative Opt-in Plaintiffs to work in excess of forty hours per workweek, Defendant denied them full compensation for their hours worked over forty for meal breaks that were interrupted due to work demands and for "off-the-clock" work.

53.     Putative Opt-in Plaintiffs perform or have performed the same or similar work as Plaintiff involving patient care.

54.     Putative Opt-in Plaintiffs are not exempt from receiving overtime compensation under the FLSA.

55.     Defendant's failure to pay overtime compensation as required by the FLSA resulted from generally applicable policies and practices, and did not depend on the personal circumstances of putative Opt-in Plaintiffs.

56.     Although Plaintiff and putative Opt-in Plaintiffs may have different job titles and/or work in different hospital facilities, this action may be properly maintained as a collective action because throughout the relevant time period:

      a. Defendant maintained common scheduling systems and policies with respect to Plaintiff and Collective members, controlled the scheduling systems and policies implemented throughout their facilities and retained authority to review and revise or approve the schedules assigned to Plaintiff and Collective members;

      b. Defendant maintained common timekeeping systems and policies

with respect to Plaintiff and Collective members;

    c.   Defendant maintained common payroll systems and policies with respect to Plaintiff and putative Opt-in Plaintiffs, controlled the payroll systems and policies applied to Plaintiff and putative Opt-in Plaintiffs, and set the pay rates assigned to Plaintiff and putative Opt-in Plaintiffs; and

    d.   Defendant controlled the meal break work policies and practices at issue in this litigation and had the ability to deprive Plaintiff and putative Opt-in Plaintiffs of wages owed for meal break work they performed.

57.    The specific job titles or precise job responsibilities of each putative Opt-in Plaintiffs do not prevent collective treatment.

58.    Putative Opt-in Plaintiffs, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek, including for interrupted, on-duty, or missed meal breaks and for hours worked "off-the-clock."

59.    Although the exact amount of damages may vary among putative Opt-in Plaintiffs, the damages for putative Opt-in Plaintiffs can be easily calculated, summed, and allocated based on a simple formula.

60.    Plaintiff and putative Opt-in Plaintiffs' claims arise from a common

nucleus of operative facts; namely, the continued and willful failure of Defendant to comply with its obligation to legally compensate its employees. Liability is based on a systematic course of wrongful conduct by Defendant that caused harm to all putative Opt-in Plaintiffs. Defendant had a plan, policy or practice of not paying Plaintiff and putative Opt-in Plaintiffs for interrupted, interruptible, or missed meal breaks, as well as work performed for Defendant while "off-the-clock."

61.    As such, the universe of similarly situated putative Opt-in Plaintiffs is properly defined as stated above. Plaintiff estimates the Collective, including both current and former employees over the relevant time period, will include upwards of 1000 people or more. The precise number of putative Opt-in Plaintiffs should be readily available from Defendant's personnel, scheduling, time and payroll records, and from input received from putative Opt-in Plaintiffs as part of the notice and "opt-in" process provided by 29 U.S.C. § 216(b).

**FIRST CAUSE OF ACTION**
**Violations of 29 U.S.C. § 207**
**Failure To Pay Overtime Compensation**
**(FLSA Collective Action)**

62.    Plaintiff re-alleges and incorporates the foregoing paragraphs as though fully set forth herein.

63.    Plaintiff and Collective members, Defendant's employees, are similarly situated individuals within the meaning of the FLSA, 29 U.S.C. § 216(b).

64.     The FLSA requires each covered employer to compensate all non-exempt employees at a rate of not less than one and one-half times their regular hourly rate for all hours worked in excess of forty hours per week.

65.     Throughout the relevant time period, Defendant expected and required Plaintiff and Collective members to be available to work and/or to be on duty during their promised meal breaks. Plaintiff and Collective members also performed work off-the-clock for which they were not compensated.

66.     Plaintiff and Collective members have been harmed as a direct and proximate result of Defendant's unlawful conduct because they have been deprived of wages owed for work they performed and from which Defendant derived a direct and substantial benefit.

67.     Defendant cannot satisfy its burden of proof to demonstrate Plaintiff and Collective members received a bona fide meal period.

68.     Defendant violated and continue to violate the FLSA when it failed to pay Plaintiff and Collective members for meal breaks under 29 U.S.C. § 207 as non-exempt employees. Because of these violations, Plaintiff and Collective members have suffered a loss of wages.

69.     Defendant's failure to pay overtime to Plaintiff and Collective members, in violation of the FLSA, was willful and not based on a good-faith belief that its conduct did not violate the FLSA. The foregoing conduct, as alleged,

constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Accordingly, a three-year limitations period should apply to Plaintiff and Collective members' claims.

70. Because of Defendant's willful violation, Plaintiff and Collective members are also due an additional equal amount as liquidated damages pursuant to 29 U.S.C. § 216(b).

71. Plaintiff and Collective members are further entitled to reasonable attorneys' fees and costs of the action in addition to any judgment awarded.

## JURY DEMAND

72. Plaintiff hereby demands a jury trial on all claims and issues for which Plaintiff is entitled to a jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a) An order preventing Defendant from retaliating in any way against Plaintiff and any Collective member who joins or elects not to opt-out of the present suit based on their pursuit of these claims alleged herein;

b) An order designating this action as a collective action on behalf of the Collective and issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals;

c) An order finding Defendant violated the FLSA willfully;

d)   An order awarding Plaintiff and the Collective all unpaid overtime wages due under the FLSA with post judgment interest thereon;

e)   An order awarding Plaintiff and the Collective an equal amount as liquidated damages as allowed under the FLSA;

f)   An order awarding Plaintiff and the Collective prejudgment interest to the extent an liquidated damages are not awarded under the FLSA;

g)   An order awarding Plaintiff and the Collective reasonable attorneys' fees, costs, and expenses of this action as provided by the FLSA;

h)   Such other and further relief to which Plaintiff and Collective members may be entitled at law or in equity.

i)   For such other and further relief as this Court deems just and proper.

Dated: June 25, 2025.

/s/ Jennifer Lossia McManus
Jennifer Lossia McManus (P65976)
Fagan McManus, P.C.
Attorneys at Law
25892 Woodward Avenue
Royal Oak, MI 48067-0910
Phone:  (248) 542-6300
Fax:  (248) 542-6301
jmcmanus@faganlawpc.com
                  and
Carolyn H. Cottrell
(to be admitted *pro hac vice*)
California Bar No. 166977
Ori Edelstein
(to be admitted *pro hac vice*)
California Bar No. 268145

Robert E. Morelli, III
(Tenn. Bar. No. 037004)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Tel:  (415) 421-7100;
Fax:  (415) 421-7105
ccottrell@schneiderwallace.com
oedelstein@schneiderwallace.com
rmorelli@schneiderwallace.com

*Lead Attorney for Plaintiff*