## THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| BRIAN DOMBAL, individually and on behalf of all others similarly situated,<br><br>            Plaintiff,<br><br>vs.<br><br>TRINITY HEALTH CORPORATION,<br><br>            Defendant. | Case No. 5:25-cv-11910<br><br>Judge: Hon. Judith E. Levy<br>Magistrate: Hon. David R. Grand |

## TRINITY HEALTH CORPORATION'S
## CORRECTED MOTION TO DISMISS PURSUANT TO RULE 12

Pursuant to Rules 12(b)(1), 12(b)(6), and 12(f) of the Federal Rules of Civil Procedure, Defendant Trinity Health Corporation hereby moves to dismiss all claims asserted against it in the putative collective action styled as "FLSA 28 U.S.C. § 216(b) Multi-Plaintiff Action," filed by Plaintiff Brian Dombal on June 25, 2025. ECF No. 1.

These counts must be dismissed because Dombal has failed to plead sufficient facts to support an employment relationship between Trinity Health Corporation, and, correspondingly, he lacks standing to assert claims against the Defendant in an individual or representative capacity.

In accordance with E.D. Mich. L.R. 7.1,  counsel for the movant conferred with the plaintiff's counsel via email on September 11, 2025,

1

and explained the nature of the motion (motion to dismiss), its legal basis (failure to show the plaintiff has an employment relationship with the defendant), and the relief requested (dismissal of complaint) but did not obtain concurrence in the relief sought. Counsel for the defendant also offered to confer further by phone regarding the instant motion if the plaintiff's counsel preferred. Counsel for the plaintiff did not require further phone conference. Relatedly, however, the plaintiff's counsel concurred with (did not oppose) the defendant's request to exceed the page limit of its memorandum in support of this motion. ECF No. 13. In support of this motion, Trinity Health Corporation submits the attached memorandum of law.

Dated: September 16, 2025          Respectfully submitted,

/s/ *J.D. Tripoli*
J.D. Tripoli
Wisconsin Bar No. 1090023
jtripoli@littler.com
LITTLER MENDELSON, P.C.
833 E. Michigan Street, Ste. 900
Milwaukee, Wisconsin 53202
Telephone:  414.978.4604
Facsimile:  414.908.9293

William Liles
Texas Bar No. 24083395
wliles@littler.com
LITTLER MENDELSON, P.C.

1301 McKinney Street, Ste. 1900
Houston, Texas 77010
Telephone:  713.951.9400
Facsimile:  713.951.9212

Michelle S. Walsh (P83790)
mswalsh@littler.com
LITTLER MENDELSON, P.C.
500 Woodward Ave., Suite 2600
Detroit, Michigan  48226
Telephone:  612.630.1000
Fax No.:  313.446.6405

***Attorneys for Defendant
Trinity Health Corporation***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 16, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF system.

/s/*J.D. Tripoli*
J.D. Tripoli

# THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

BRIAN DOMBAL, individually
and on behalf of all others
similarly situated,

       Plaintiff,

vs.

TRINITY HEALTH
CORPORATION,

       Defendant.

Case No. 5:25-cv-11910

Judge: Hon. Judith E. Levy
Magistrate: Hon. David R. Grand

# MEMORANDUM IN SUPPORT OF
# TRINITY HEALTH CORPORATION'S CORRECTED MOTION
# TO DISMISS

## TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................. 1

STATEMENT OF THE CASE ................................................ 5

LEGAL STANDARD ............................................................. 8

ARGUMENT ....................................................................... 10

   I.   Dombal Has Not Pleaded Sufficient Facts To Establish
He Was An "Employee" Of Trinity Health Under The
FLSA. .................................................................... 10

      A.   A plaintiff alleging a joint-employer relationship must
plead facts showing economic dependence on the
putative joint-employer. ........................................ 10

      B.   Dombal pleads no allegations that plausibly show an
employment relationship with or economic dependence
on Trinity Health. ................................................. 14

      c.   Dombal's conclusory allegations fail to establish a
joint-employer arrangement between Trinity Health
and Saint Francis Hospital. .................................. 22

      D.   Dombal pleads no facts to rebut the presumption under
Michigan law that parent and subsidiary corporations
are presumed separate and distinct legal entities. ............. 24

   II.   Dombal Does Not Plausibly Allege Standing To Sue
Trinity Health For Unpaid Wages. ........................... 29

      A.   A complaint that fails to plead an injury-in-fact
traceable to the defendant's conduct must be
dismissed. ............................................................. 29

      B.   Dombal fails to plausibly allege any injury caused by
or traceable to Trinity Health. ............................. 30

III. In The Alternative, The Court Should Dismiss Or Strike Dombal's Nationwide Collective Allegations. ............................31

    A.   Collective allegations must plausibly show a "strong likelihood" that other employees are similarly situated. ......................................................................................31

    B.   Dombal fails to plausibly plead any facts that show employees are similarly situated anywhere other than Saint Francis Hospital. .........................................................33

CONCLUSION ......................................................................35

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Acosta v. Off Duty Police Servs., Inc.*,
　915 F.3d 1050 (6th Cir. 2019) ............................................................. 13

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .................................................................. *passim*

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) .................................................................. *passim*

*Bey v. WalkerHealthCareIT, LLC*,
　2018 WL 2018104 (S.D. Ohio May 1, 2018) ................................. 22, 23

*Bodnar v. St. John Providence, Inc.*,
　327 Mich. App. 203, 933 N.W.2d 363 (2019) ...................................... 13

*Cavallaro v. UMass Mem'l Health Care, Inc.*,
　971 F. Supp. 2d 139 (D. Mass. 2013) .................................................. 33

*Clark v. A&L Homecare and Training Center, LLC*,
　68 F.4th 1003 (6th Cir. 2023) ............................................................. 32

*U.S. Dep't of Labor v. Cole Enters., Inc.*,
　62 F.3d 775 (6th Cir. 1995) ................................................................ 11

*Davis v. Abington Mem'l Hosp.*,
　817 F. Supp. 2d 556 (E.D. Pa. 2011) .................................................. 30

*Dole v. Elliott Travel & Tours, Inc.*,
　942 F.2d 962 (6th Cir. 1991) .............................................................. 11

*Donovan v. Brandel*,
　736 F.2d 1114 (6th Cir. 1984) ............................................................ 13

*Edmondson v. Nissan N. Am., Inc.*,
　2023 WL 6368169 (M.D. Tenn. Sep. 28, 2023) .............................. 14, 25

*Ellington v. City of E. Cleveland,*
    689 F.3d 549 (6th Cir. 2012)............................................................ 11

*Fritz v. Charter Twp. of Comstock,*
    592 F.3d 718 (6th Cir. 2010)............................................................ 19

*Goldberg v. Whitaker House Co-op., Inc.,*
    366 U.S. 28 (1961).......................................................................... 11

*Gonzalez v. HCA, Inc.,*
    2011 WL 3793651 (M.D. Tenn. Aug. 24, 2011) .............................. 14

*Hill v. Wells Fargo Bank, N.A.,*
    946 F. Supp. 2d 817 (N.D. Ill. 2013)................................................ 35

*Holmer v. Alcove Ventures, LLC,*
    2024 WL 4350906 (N.D. Ohio Sep. 30, 2024) ................................ 12

*Hughes v. Nw. Univ.,*
    63 F.4th 615 (7th Cir. 2023) ........................................................... 10

*Ladik v. Wal-Mart Stores, Inc.,*
    291 F.R.D. 263 (W.D. Wis. 2013)..................................................... 34

*Lucas v. BMS Enterprises,*
    2010 WL 2671305 (N.D. Tex. July 1, 2010)..................................... 30

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992)................................................................... 29, 31

*Michigan GeoSearch, Inc. v. TC Energy Corp.,*
    694 F. Supp. 3d 928 (E.D. Mich. 2023)................................ 13, 24, 25

*Narjes v. Absolute Health Servs., Inc.,*
    2018 WL 3208180 (N.D. Ohio June 29, 2018) ................................ 13

*Parrott v. Marriott Int'l, Inc.,*
    2017 WL 3891805 (E.D. Mich. Sept. 6, 2017) ................................ 12

*Parsons v. U.S. Dept. of Justice,*
    801 F.3d 701 (6th Cir. 2015)............................................................ 29

*Potter v. Cardinal Health 200, LLC*,
   381 F. Supp. 3d 729 (E.D. Tex. 2019)..........................................33, 34

*Prestige Pet Prods., Inc. v. Pingyang Huaxing Leather &
   Plastic Co.*,
   767 F. Supp. 2d 806 (E.D. Mich. 2011)....................................*passim*

*Reyes-Trujillo v. Four Star Greenhouse, Inc.*,
   513 F. Supp. 3d 761 (E.D. Mich. 2021)....................................*passim*

*Seasword v. Hilti, Inc.*,
   449 Mich. 542, 537 N.W.2d 221 (Mich. 1995) ...................................13

*Solis v. Laurelbrook Sanitarium & Sch., Inc.*,
   642 F.3d 518 (6th Cir. 2011)...............................................11

*Spencer v. Connecticut*,
   560 F. Supp. 2d 153 (D. Conn. 2008)........................................19, 20

*Spokeo, Inc. v. Robins*,
   578 U.S. 330 (2016).......................................................30

*Stubbs v. McDonald's Corp.*,
   224 F.R.D. 668 (D. Kan. 2004).............................................35

*Tatar v. Nugent*,
   2025 WL 2463148 (E.D. Mich. Aug. 26, 2025) ............................19, 27

*Turaani v. Wray*,
   440 F. Supp. 3d 733 (E.D. Mich. 2020)....................................29, 31

*Warth v. Seldin*,
   422 U.S. 490 (1975).......................................................30

*Weisbarth v. Geauga Park Dist.*,
   499 F.3d 538 (6th Cir. 2007)............................................9, 14

*Woods v. First Transit, Inc.*,
   2023 WL 6290781 (N.D. Ohio Sept. 27, 2023)...............................32

*16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,
   727 F.3d 502 (6th Cir. 2013)............................................10, 26

**Statutes**

29 U.S.C. § 203(d)................................................................................11

29 U.S.C. § 207(a)(1)...........................................................................10

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ..............................................................3,4, 22

Fed. R. Civ. P. 23(d)(1)(D) ...................................................................35

## INTRODUCTION

Sometimes silence speaks volumes. This familiar adage applies especially here, where Brian Dombal alleges that Trinity Health Corporation ("Trinity Health") owes wages to him and a putative collective for "'off-the-clock' work . . . including work performed during unpaid meal breaks." Glaringly absent from his complaint, however, are any facts that show Trinity Health was his employer.

What Dombal did plead suggests just the opposite. According to the complaint, Dombal works at "Saint Francis Hospital and Medical Center in Hartford, Connecticut" ("Saint Francis Hospital"). Trinity Health, the complaint says, "is an Indiana nonprofit corporation, with its headquarters in Livonia, Michigan." How exactly is a Connecticut-based hospital tied to an Indiana-based corporation headquartered in Michigan? The complaint gives no answers. Notwithstanding this factual gap, the complaint concludes that Trinity Health is a "joint employer[] of [Dombal] and Opt-in Plaintiffs." More puzzling, a *joint*-employer relationship requires the existence of at least two employer entities. Yet the complaint does not even identify the *other* employer in this alleged joint-employer relationship (referred to as "the unidentified putative co-

employer" in remainder of this brief). Dombal alleges only that Saint Francis Hospital is his work location, not his employer or co-employer.

Dombal's theory of joint employment rests entirely on one—and only one—conclusory allegation that Trinity Health "owned and operated" Saint Francis Hospital. But the complaint does not substantiate this either. It contains no facts about Saint Francis Hospital's corporate structure, much less any facts that show Trinity Health actually operated the hospital. And even if facts exist that suggest a parent-subsidiary relationship between Trinity Health and Saint Francis Hospital, any alleged liability attributable to Saint Francis Hospital is not automatically imputed to Trinity Health. In Michigan, parent and subsidiary corporations are presumed separate and distinct legal entities. Dombal must plead facts that override this cardinal rule of corporate law. He plainly does not. None of these facts are difficult to uncover or plead if they existed—especially for Dombal, who remains employed at Saint Francis Hospital and would have ready access to such information. The complaint's silence speaks for itself.

Yet a more fundamental deficiency plagues the complaint: It contains no facts that show a joint-employer relationship between

Dombal and Trinity Health. This Court applies the six-factor economic reality test to examine the existence of a joint-employer relationship. Dombal's complaint recites some of those factors but submits no facts to support an employment relationship under any of them. Not a single one. And critically, the complaint omits any specific facts that show Dombal had any economic dependence on Trinity Health—the linchpin of a joint-employer claim.   Conclusory statements devoid of factual support—statements like Trinity Health "operated" Saint Francis Hospital and "employed" Dombal—are not entitled to the assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). Dombal's "'formulaic recitation of the [economic reality] elements'" and unsupported "'labels and conclusions'" about Trinity Health's affiliation with him or Saint Francis Hospital simply "will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

That's not all. When "an obvious alternative explanation" at the pleading stage precludes liability, the plaintiff must plead facts that overcome the alternative explanation to survive dismissal under Rule 12(b)(6). *Iqbal*, 556 U.S. at 682; *Twombly*, 550 U.S. at 567. This Court,

too, has recognized the absence of factual allegations can create "an 'obvious alternative explanation' that provides no grounds for relief." *Prestige Pet Prods., Inc. v. Pingyang Huaxing Leather & Plastic Co.*, 767 F. Supp. 2d 806, 812 (E.D. Mich. 2011) (quoting *Iqbal* and citing *Twombly*). Here, the complaint pleads no facts showing an economic or operational nexus that connects Trinity Health to Dombal or Saint Francis Hospital. That much is irrefutable. The absence of any pleaded facts showing Trinity Health "operates" Saint Francis Hospital or "supervises" Dombal from over 700 miles away signals considerably obvious alternative explanations: Saint Francis Hospital or the unidentified putative co-employer is Dombal's true and only employer. This is the only reasonable inference drawn from the gaps in Dombal's complaint. Based on the facts pleaded—and omitted—a joint-employer relationship is simply not a plausible conclusion.

Unsupported allegations are not the only deficiency that doom Dombal's complaint. By failing to plausibly allege that Trinity Health employs Dombal or influences any terms and conditions of his employment with Saint Francis Hospital, he cannot have suffered an injury traceable to Trinity Health, and therefore has no standing to sue

4

Trinity Health. Because Dombal has not plausibly alleged a joint-employer relationship with Trinity Health or any injury attributable to Trinity health, his complaint should be dismissed in its entirety.

## STATEMENT OF THE CASE

Dombal, a resident of "Wethersfield, Connecticut," "is employed as a Cardiac IC nurse" at "Saint Francis Hospital and Medical Center in Hartford, Connecticut." ECF No. 1, ¶ 11. Trinity Health, on the other hand, "is an Indiana nonprofit corporation, with its headquarters in Livonia, Michigan." *Id*. ¶ 13.

Dombal alleges "Trinity Health is a health system" that "operates a network of hospitals and clinics" across the nation. *Id*. ¶¶ 13, 23. The complaint, however, pleads inconsistent facts regarding this "network." Initially, the complaint says Trinity Health operates "101 hospitals across the nation." *Id*. ¶ 6. The complaint later alleges Trinity Health "operat[es] approximately 93 hospitals in 23 states." *Id*. ¶ 13. Further in the complaint, Dombal says Trinity Health operates in 21 states. *Id*. ¶ 23.

Notwithstanding these inconsistencies, Dombal alleges "Saint Francis Hospital and Medical Center is one of the hospitals within [Trinity Health]'s healthcare network." *Id*. ¶ 24. He further contends that

Trinity Health "owns and operates" Saint Francis Hospital. *Id*. ¶ 14; *id*. ¶ 24 (same). From these contentions alone, the complaint concludes Trinity Health "acted as joint employers of [Dombal] and Opt-in Plaintiffs[.]" *Id*. ¶ 19. But the complaint does not identify a second employer in the alleged joint-employer relationship. It contains only two allegations about Dombal's alleged employer. *See id*. ¶¶ 11, 14. None of them allege that Saint Francis Hospital or another entity is the other employer with whom Trinity Health shares a joint-employer relationship. Instead, his two allegations say Trinity Health is his only employer and Saint Francis Hospital is merely the location of his employment: (1) "He is employed as a Cardiac IC nurse by [Trinity Health] at its Saint Francis Hospital and Medical Center in Hartford, Connecticut"; and (2) "[Trinity Health] owns and operates hospitals and clinics, including the Saint Francis Hospital and Medical Center where Plaintiff worked[.]" *Id*. ¶¶ 11, 14.

The complaint also contains no factual details that explain who, what, when, why, or how Trinity Health operates Saint Francis Hospital from Livonia, Michigan (located over 700 miles away) or any other hospital within Trinity Health's alleged network. Instead, it merely

6

recites factors of the so-called economic reality test that courts consider when analyzing whether a joint employment relationship exists, but otherwise alleges no specific facts applying these factors:

¶ 19.   "[Trinity Health] jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of [Dombal] and Opt-in Plaintiffs along with the facilities where they worked."

¶ 30.   "[Dombal] and patient care staff reported to a hospital or clinical facility owned, operated, or managed by [Trinity Health] to perform their jobs."

¶ 31.   "[Dombal] and patient care staff performed their jobs under Defendant's supervision and using materials and technology approved and supplied by [Trinity Health]."

¶ 33.   "At the end of each pay period, [Dombal] [sic] patient care staff received wages from [Trinity Health] that were determined by common systems and methods that [Trinity Health] selected and controlled."

¶ 56(a) "[Trinity Health] maintained common scheduling systems and policies with respect to [Dombal] and Collective members [and] controlled the scheduling systems and policies implemented throughout their facilities and retained authority to review and revise or approve the schedules assigned to [Dombal] and Collective members[.]"

¶ 56(b) "[Trinity Health] maintained common timekeeping systems and policies with respect to [Dombal] and Collective members[.]"

¶ 56(c) "[Trinity Health] maintained common payroll systems and policies with respect to [Dombal] and putative Opt-in Plaintiffs, controlled the payroll systems and policies applied to [Dombal] and putative Opt-in Plaintiffs, and set the pay rates assigned to [Dombal] and putative Opt-in Plaintiffs[.]"

¶ 56(d) "[Trinity Health] controlled the meal break work policies and practices at issue in this litigation and had the ability to deprive [Dombal] and putative Opt-in Plaintiffs of wages owed for meal break work they performed."

The complaint offers no specific facts to support any of the conclusions asserted in ¶¶ 19, 30–31, 33, and 56. Nevertheless, Dombal relies on these paragraphs exclusively to claim Trinity Health owes him (and others) overtime wages for "'off-the-clock' work" at Saint Francis Hospital allegedly performed during "unpaid meal breaks." *Id.* ¶¶ 47, 51. Among other requests, he seeks an order awarding him and a putative collective "all unpaid wages, liquidated damages, other damages owed to them under the [Fair Labor Standards Act]" (FLSA). *Id.* ¶ 8.

## LEGAL STANDARD

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). *Iqbal* and *Twombly* "oblige[] a pleader to amplify a claim with some

8

factual allegations in those contexts where such amplification is needed to render the claim plausible." *Weisbarth v. Geauga Park Dist.*, 499 F.3d 538, 541 (6th Cir. 2007). While the court must accept a complaint's factual allegations as true, this presumption does not apply to legal conclusions or allegations devoid of any factual support. Federal rules "do[ ] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678–79. The rules "demand[] more than an unadorned accusation." *Id.* at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678. "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557) (internal brackets omitted).

A plaintiff must also overcome additional hurdles at the dismissal stage when "an obvious alternative explanation" precludes liability. *Twombly*, 550 U.S. at 567. Obvious alternative explanations "illustrate[] the unreasonableness of the inference sought and the implausibility of the claims made." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*,

727 F.3d 502, 505 (6th Cir. 2013); *Hughes v. Nw. Univ.*, 63 F.4th 615, 629 (7th Cir. 2023) ("*Twombly* and *Iqbal* establish that an obvious alternative explanation for a defendant's conduct that precludes liability can undermine the claim's plausibility." (citations omitted)). And relevant here, the "absen[ce] [of] factual allegations" can create "an 'obvious alternative explanation' that provides no grounds for relief." *Prestige Pet Prods.*, 767 F. Supp. 2d at 812  (quoting *Iqbal*, 556 U.S. at 682, and citing *Twombly*, 550 U.S. at 567). Put more simply, if an "*obvious* alternative explanation exists" then it "must be overcome at the pleadings stage . . . and only by a plausible showing that such alternative explanations" do not apply. *Hughes*, 63 F.4th at 629.

## ARGUMENT

## I.   Dombal Has Not Pleaded Sufficient Facts To Establish He Was An "Employee" Of Trinity Health Under The FLSA.

### A.   A plaintiff alleging a joint-employer relationship must plead facts showing economic dependence on the putative joint-employer.

The FLSA applies only to "employees" who are "employed" by "employers." 29 U.S.C. § 207(a)(1). While the statute defines "employer" broadly to include any entity "acting directly or indirectly in the interest of an employer in relation to an employee," 29 U.S.C. § 203(d), this

definition is not limitless. Courts in the Sixth Circuit analyze the economic realities of an employee's relationship to an alleged employer to assess joint employer status under the FLSA. The "economic reality of the relationship between parties" determines whether an employment relationship exists under the FLSA. *Solis v. Laurelbrook Sanitarium & Sch., Inc.*, 642 F.3d 518, 522 (6th Cir. 2011).

The economic reality test focuses on the totality of the circumstances and the degree of economic dependence the worker has on the alleged employer. This test focuses on whether an employee is economically dependent on an employer, rather than on "technical concepts" of employment. *Goldberg v. Whitaker House Co-op., Inc.*, 366 U.S. 28, 33 (1961). In other words, economic reality governs the analysis, not technical labels. *Ellington v. City of E. Cleveland*, 689 F.3d 549, 555 (6th Cir. 2012); *U.S. Dep't of Labor v. Cole Enters., Inc.,* 62 F.3d 775, 778 (6th Cir. 1995); *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 965 (6th Cir. 1991).

Although the Sixth Circuit has not articulated a distinct test for determining whether an entity qualifies as a joint employer for FLSA purposes, this Court and district courts in the Sixth Circuit consider the

11

following factors:

> a. the permanency of the relationship between the parties;
> b. the degree of skill required for the rendering of the services;
> c. the worker's investment in equipment or materials for the task;
> d. the worker's opportunity for profit or loss, depending upon his skill;
> e. the degree of the alleged employer's right to control the manner in which the work is performed;
> f. whether the service rendered is an integral part of the alleged employer's business;
> g. whether the business had the power to hire and fire employees; and
> h. whether the defendant maintained employment records.

*Reyes-Trujillo v. Four Star Greenhouse, Inc.,* 513 F. Supp. 3d 761, 783 (E.D. Mich. 2021).

In addition to the economic reality factors, this district also considers whether the plaintiff's alleged joint employer "supervised and controlled employee work schedules or conditions of employment" or "determined the [plaintiff's] rate and method of payment." *Parrott v. Marriott Int'l, Inc.,* No. 17-10359, 2017 WL 3891805, at *2 (E.D. Mich. Sept. 6, 2017) (citation and internal brackets omitted); *Reyes-Trujillo,* 513 F. Supp. 3d at 783 (same); *see also Holmer v. Alcove Ventures, LLC,* No. 1:23-cv-747, 2024 WL 4350906 at *29 (N.D. Ohio Sep. 30, 2024); *Narjes v. Absolute Health Servs., Inc.,* No. 5:17CV739, 2018 WL 3208180,

12

at *4 (N.D. Ohio June 29, 2018). "None of these factors is determinative on its own, and each must be considered 'with an eye toward the ultimate question—[the worker's] economic dependence on or independence from' the alleged employer." *Acosta v. Off Duty Police Servs., Inc.*, 915 F.3d 1050, 1055 (6th Cir. 2019); *Donovan v. Brandel*, 736 F.2d 1114, 1120 (6th Cir. 1984) (same).

Lastly, in Michigan, absent some abuse of the corporate form itself, parent and subsidiary corporations are presumed to be separate and distinct legal entities. *Michigan GeoSearch, Inc. v. TC Energy Corp.*, 694 F. Supp. 3d 928, 940 (E.D. Mich. 2023) (quoting *Seasword v. Hilti, Inc.*, 449 Mich. 542, 548, 537 N.W.2d 221 (Mich. 1995)). "Consequently, before a corporate parent may be held liable for the actions of its subsidiary, facts that justify piercing the corporate veil must be shown." *Id.* (quoting *Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 933 N.W.2d 363, 378 (2019)). Consistent with these principles, FLSA claims against known parent companies must be dismissed where plaintiffs fail to allege facts showing the parent's involvement in the employment relationship. *See Gonzalez v. HCA, Inc.,* No. 3:10-00577, 2011 WL 3793651, at *4 (M.D. Tenn. Aug. 24, 2011). Even where a parent company is alleged to be part

13

of an integrated enterprise, a plaintiff still must plead specific factual allegations showing shared control over employment terms to survive a motion to dismiss. *Edmondson v. Nissan N. Am., Inc.*, No. 3:21-cv-00285, 2023 WL 6368169, at *3 (M.D. Tenn. Sep. 28, 2023).

### B. Dombal pleads no allegations that plausibly show an employment relationship with or economic dependence on Trinity Health.

Dombal's complaint falls far short of the pleading requirements set forth in *Iqbal* and *Twombly*. It merely recites several economic reality test factors but fails to "amplify [his] claim with some factual allegations" showing how those factors *actually* apply to Trinity Health. *Weisbarth*, 499 F.3d at 541. Conspicuously, the complaint contains no factual details about who, when, why, or how Trinity Health exercised any control over his work, employment conditions, or wages. *See* ECF No. 1, ¶¶ 19, 30–31, 33, and 56. "[S]uch amplification is needed to render [a joint employer] claim plausible," *Weisbarth*, 499 F.3d at 541, but is completely missing here. The economic reality factors applied to Dombal's complaint are as follows:

Permanency of Relationship. This factor considers the "length and regularity of the working relationship between the parties." *Reyes-*

*Trujillo*, 513 F. Supp. 3d at 783. Here, the complaint alleges Dombal worked at Saint Francis Hospital since November 2021, but he does not allege any interaction, let alone a working relationship, with Trinity Health. ECF No. 1, ¶28. The complaint contains no facts suggesting that Trinity Health Corporation had any role in hiring, retaining, or managing Dombal's employment. Without such allegations, this factor weighs against joint employment.

<u>Degree of Skill Required</u>. This factor considers "the degree of skill required for the rendering of the services." *Reyes-Trujillo*, 513 F. Supp. 3d at 784. Dombal alleges that he worked as a Cardiac ICU nurse and previously as an EKG technician, roles that require specialized training and licensure. ECF No. 1, ¶28. The Complaint does not allege that Trinity Health provided training or credentialing, and only includes unsupported conclusory allegations regarding oversight of his work—again, Dombal pleads no facts that show who, when, why, or how Trinity Health oversaw his work. The absence of any factual link between Trinity Health Corporation and the skill-based aspects of Dombal's role at Saint Francis Hospital undermines any inference of joint employment.

Investment in Equipment or Materials. This factor considers "the workers' investment in specialized equipment to complete their assigned tasks" and compares "the worker's total investment to 'the company's total investment, including office rental space, advertising, software, phone systems, or insurance.'" *Reyes-Trujillo*, 513 F. Supp. 3d at 785. Here, the complaint is completely silent on this point. It does not allege that Trinity Health maintained facilities or invested in the infrastructure used by Dombal. Nor does it allege that Dombal made any personal investment in tools or materials. And while Dombal alleges he "us[ed] materials and technology approved and supplied by [Trinity Health]," missing from his complaint are any facts that explain what those materials and technology were, or when or how Trinity Health approved or supplied them. ECF No. 1, ¶ 31. No inference can be credited in Dombal's favor without such factual details. Without facts showing Trinity Health's involvement in the operational environment, this factor cannot support joint employment.

Degree of Control over Dombal's Work. "This factor considers the degree of control the putative employer may exercise over the workers" and "ask[s] whether the company 'retains the right to dictate the manner'

16

of the worker's performance." *Reyes-Trujillo*, 513 F. Supp. 3d at 786. Here, the complaint does not allege that Trinity Health supervised Dombal's work, assigned his tasks, or enforced policies at Saint Francis Hospital. The complaint merely concludes that Trinity Health "controlled the employment terms, pay practices, timekeeping practices, and daily work," but provides no factual support for how, when, or through what mechanisms such control was exercised. ECF No. 1, ¶19. The allegation that Trinity Health "operates" Saint Francis is conclusory and wholly unsupported. *See infra* at 21–26 (Arg. § I. subs. C.–D.). Without allegations supported by specific facts showing Trinity Health's actual control over Dombal or Saint Francis Hospital, this factor weighs against joint employment.

<u>Integral Services</u>. This factor considers whether the worker's services were integral to the alleged employer's business. *Reyes-Trujillo*, 513 F. Supp. 3d at 786. "The more integral the worker's services are to the business, then the more likely it is that the parties have an employer-employee relationship." *Id*. Dombal's role as a nurse was undoubtedly integral to the operations of Saint Francis Hospital, but the complaint does not allege that his work was integral to Trinity Health's business or

17

its operations in Indiana or Michigan. There are no facts suggesting that Trinity Health directly provided healthcare services or relied on Dombal's labor to fulfill its own business objectives. The absence of such allegations undermines any inference of an employment relationship.

Ability to Hire & Fire. The complaint contains no allegations that Trinity Health had the authority to hire or fire Dombal, much less any influence over such decisions. There is no suggestion that Trinity Health participated in staffing decisions at Saint Francis Hospital or had any role in determining who was employed there. This silence is telling and weighs heavily against joint employment.

Supervision and Scheduling. The complaint merely concludes—without any factual support—that Trinity Health "controlled the scheduling systems and policies implemented throughout their facilities and retained authority to review and revise or approve the schedules." ECF No. 1, ¶ 56(a). The complaint is devoid of any facts showing that Trinity Health issued directives, managed shifts, or oversaw day-to-day operations at Saint Francis Hospital. Because the complaint lacks any facts that plausibly eliminate obvious alternative explanations—namely, that Saint Francis Hospital or the unidentified putative co-employer

18

supervises Dombal and controls his schedule—no inference can be credited in Dombal's favor. *Prestige Pet Prods.,* 767 F. Supp. 2d at 812.

Likewise, the complaint similarly concludes—again, without any factual support—that Trinity Health "jointly, directly or indirectly, controlled the employment terms, pay practices, timekeeping practices, and daily work of [Dombal]". ECF No. 1, ¶ 19. But a complaint must be intelligible enough to give fair "'notice to the defendant as to what claims are alleged,'" and courts are well within their discretion to dismiss complaints that fail to do so. *Tatar v. Nugent*, No. 2:25-CV-10296-TGB-DRG, 2025 WL 2463148, at *2 (E.D. Mich. Aug. 26, 2025) (quoting *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)). After all, "when looking at a complaint, a defendant should not have to guess what the claims against him are." *Spencer v. Connecticut*, 560 F. Supp. 2d 153, 160 (D. Conn. 2008). Pretermitting that Dombal submits no facts whatsoever to support that Trinity Health "jointly" or "directly" controlled Dombal's employment, it is impossible for Trinity Health to know what constitutes "indirect" control absent alleged facts that support such implicit control. "There is no 'notice by implication' pleading standard in federal court." *Id*. Having pleaded no facts that remotely

19

suggest Trinity Health supervised Dombal or influenced his schedule, this factor cannot support a finding of joint employment.

Rate and Method of Pay. Dombal says "he received wages from" Trinity Health and Trinity Health "controlled the payroll systems and policies" applied to him "and set the pay rates assigned to" him. ECF No. 1, ¶¶ 33, 56(c). But as above, he pleads no factual details that support these conclusory allegations. The complaint includes no allegations, for example, as to the identity of the employer on Dombal's paystubs or any written policy suggesting that Trinity Health—not Saint Francis Hospital or the unidentified putative co-employer—controlled his pay rate, controlled Saint Francis Hospital's payroll systems, or determined Saint Francis Hospital's payroll policies. Having pleaded no facts to infer that Trinity Health controlled Saint Francis Hospital's payroll practices or supervised compensation policies applicable to Dombal, this factor undercuts any inference of a joint employment relationship.

Opportunity for Profit or Loss. This factor considers whether the worker "'could exercise or hone their managerial skill to increase their pay.'" *Reyes-Trujillo*, 513 F. Supp. 3d at 785. Dombal's complaint alleges he was paid hourly at a rate of approximately $39.75, but he does not

allege any opportunity to increase or decrease his compensation based on performance, efficiency, or business decisions. ECF No. 1, ¶ 28. Nor does Dombal allege that Trinity Health had any role in influencing his ability to earn more. Without such allegations, this factor does not support a joint employment relationship.

Employment Records. The complaint does not allege that Trinity Health maintained any employment records for Dombal. There is no suggestion that Trinity Health tracked his hours. In fact, he alleges precisely the opposite: Trinity Health "routinely fail[ed] to maintain true and accurate records of the hours worked by patient care staff." ECF No. 1, ¶ 44. This would be true, of course, if Trinity Health was not Dombal's direct or joint employer. Nor does the complaint allege that Trinity Health documented his performance or created records involving his work at Saint Francis Hospital. The absence of such allegations further confirms that Dombal has not plausibly alleged an employment relationship with Trinity Health.

### C.   Dombal's conclusory allegations fail to establish a joint-employer arrangement between Trinity Health and Saint Francis Hospital.

Applying *Iqbal's* principles in the context of a joint-employer claim, a plaintiff cannot satisfy Fed. R. Civ. P. 8 by making an unsupported assertion that one corporation "operates" the other. Without more, Dombal's assertion that Trinity Health "operates" Saint Francis is a legal conclusion couched as a factual allegation. It remains entirely unclear, for example, how any of the factors set forth in *Reyes* and *Parrott* apply, in actual effect, to Trinity Health. *Supra* at 14–21 (Arg. § I. subs. B.).  A claim that asserts liability and nothing more fails under Fed. R. Civ. P. 12(b)(6). Rule 8 requires more than such bare conclusions. It requires "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Dombal's complaint simply fails to provide such content.

Dombal's bare accusations of "ownership and control" are not enough to state a joint-employer relationship. The dismissal of the plaintiff's FLSA claim in *Bey v. WalkerHealthCareIT, LLC*, is especially instructive and illustrates Dombal's pleading problems. No. 2:16-CV-1167, 2018 WL 2018104 (S.D. Ohio May 1, 2018). In *Bey*, like here, the

plaintiff repeatedly alleged the putative joint employer "had interrelated operations with [the plaintiff]'s undisputed employer." *Id.*, at \*9. Recognizing that "[t]he Sixth Circuit has not enumerated a test for assessing whether two entities are joint employers for the purpose of the FLSA," the court applied the economic reality test along with "a four-factor test used by the Sixth Circuit in making joint employer determinations in the context of the National Labor Relations Act." *Id.* (collecting cases). Those four additional factors are: "(i) the interrelation of operations between the companies; (ii) common management; (iii) centralized control of labor relations, and (iv) common ownership." *Id.* The court dismissed Bey's complaint because she "has not included allegations relevant to any of these factors in her Amended Complaint." *Id.*

Dombal omits the same requisite facts here. He "repeatedly alleges that [Trinity Health] and [Saint Francis Hospital] engaged in a 'joint business effort.'" *Id.* But "that conclusory label is not sufficient to plausibly suggest that the two companies had interrelated operations, common management, centralized control of labor relations, or common ownership." *Id.* And as shown above, the complaint provides no factual

23

details to illuminate any of the *Reyes* and *Parrott* factors. Dombal therefore "has not sufficiently alleged that [Trinity Health] is liable for FLSA violations based on a joint-employer theory." *Id*.

### D. Dombal pleads no facts to rebut the presumption under Michigan law that parent and subsidiary corporations are presumed separate and distinct legal entities.

Dombal's complaint also ignores the fundamental principle of corporate law that a corporate parent is not presumed liable for the actions of a subsidiary. Perhaps aiming to avoid this cardinal rule, he simply concludes that Trinity Health and Saint Francis Hospital are one and the same because the former "owns and operates" the latter. ECF No. 1, ¶¶ 23–24. Dombal's conclusion is incorrect for several reasons. First (and most obviously), it is facially implausible that "an Indiana nonprofit corporation, with its headquarters in Livonia, Michigan" is indistinguishable from a hospital in Hartford, Connecticut. *Id*., ¶¶ 11, 13. Second, Michigan law presumes Trinity Health is separate and distinct from Saint Francis Hospital. *Michigan GeoSearch, Inc.*, 694 F. Supp. 3d at 940. Although Dombal concludes that Trinity Health "owns" Saint Francis Hospital, he fails to identify any facts to substantiate that allegation. Third, and most importantly, while Dombal alleges various

wage violations, the complaint includes no facts whatsoever from which this Court can infer an agency or parent-subsidiary relationship between Trinity Health and Saint Francis Hospital, much less "facts that justify piercing the corporate veil" to hold Trinity Health accountable for Saint Francis Hospital's purported violations. *Id*. Nor does the complaint plead any factual allegations showing shared control over Dombal's employment terms. *Edmondson*, 2023 WL 6368169, at *3.

"Absent such factual allegations, there exists in the instant case an 'obvious alternative explanation' that provides no grounds for relief[.]" *Prestige Pet Prods.*, 767 F. Supp. 2d at 812 (quoting *Iqbal*, 556 U.S. at 682). Here, that obvious alternative explanation is that Saint Francis Hospital or the unidentified putative co-employer is Dombal's true and only employer. Indeed, that is the only "natural explanation" once Dombal's conclusory obligations drop out. *Twombly*, 550 U.S. at 568. The complaint merely speculates that Trinity Health (based in Indiana/Michigan) "operates" Saint Francis Hospital (based in Connecticut), without any facts to support that conclusion. The complaint further omits any allegation about Saint Francis Hospital's corporate form. Absent any allegation showing that Saint Francis Hospital's

corporate structure should be disregarded for purposes of a joint-employer claim, the obvious alternative explanation is that Saint Francis Hospital is a distinct and separate corporate entity from Trinity Health. And for that reason, Trinity Health is *not* Dombal's employer under either a direct or joint-employer theory. "[T]he existence of [these] obvious alternative explanations simply illustrates the unreasonableness of the inference sought" by Dombal—*i.e.*, that Trinity Health is his joint employer—"and the implausibility of [his] claims." *16630 Southfield Ltd. P'ship*, 727 F.3d at 505.

*   *   *

Dombal has not plausibly alleged a joint employment relationship with Trinity Health under the economic reality factors. His "[t]hreadbare recitals of the elements of a [joint-employer relationship], supported by mere conclusory statements" fall far short of Fed. R. Civ. P. 8's pleading requirements. *Iqbal*, 556 U.S. at 678–79. The complaint contains no facts at all that show Trinity Health exercised control over Saint Francis Hospital or Dombal's employment.

The complaint also lacks any facts showing that Dombal is economically dependent on Trinity Health. Instead, it merely recites the

26

economic reality factors without further context or factual development that tangibly connects those factors to him or Trinity Health. "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the [economic reality factors],'" are insufficient to state a claim for relief and must be disregarded. *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555). In short, Dombal "has not 'nudged his claims' [against Trinity Health] 'across the line from conceivable to plausible.'" *Id*. at 680; *Tatar*, 2025 WL 2463148, at *2 ("[T]he plaintiff must plead 'sufficient factual matter' to render the legal claim plausible, *i.e.*, more than merely possible." (citations omitted)).

Critically, too, by omitting these factual details, Dombal fails to overcome the obvious alternative explanations lurking in his complaint. This Court recognizes that pleading gaps can create an obvious alternative explanation that precludes relief. *Prestige Pet Prods.,* 767 F. Supp. 2d at 812. Here, a plain reading of the complaint prompts several fundamental questions: Is Saint Francis Hospital an individual corporate entity? Why isn't Saint Francis Hospital Dombal's employer? Who is the unidentified putative co-employer? Why isn't the unidentified putative co-employer Dombal's employer? The complaint provides no answers to

27

any of these central questions. These pleading gaps infer obvious alternative explanations: That Saint Francis Hospital or the unidentified putative co-employer (or both) exercises exclusive control over Saint Francis Hospital's day-to-day operations, including Dombal's pay rate, work schedule, work assignments, personnel records, performance reviews, and work equipment. In any event, that the complaint fails to name Dombal's putative co-employer or link that putative employer to Trinity Health is reason enough to dismiss it.

Federal courts aim "to avoid the potentially enormous expense of discovery in cases with no reasonably founded hope that the [discovery] process will reveal relevant evidence." *Twombly*, 550 U.S. at 559 (internal quotation marks omitted). Here, if the obvious alternative conclusions from the pleadings—namely, that (1) Saint Francis Hospital is separate and distinct from Trinity Health, and (2) Trinity Health has no employment relationship with Dombal whatsoever—reflects the actual state of affairs, then allowing this case to proceed to discovery will produce (rather than "avoid") "potentially enormous" discovery expenses that *Twombly* sought to deter. *Id.* It is easy to forecast discovery disputes

28

that will follow requests for interrogatory responses and documents that Trinity Health neither knows, possesses or controls.

Because Dombal failed to allege facts sufficient to establish that Trinity Health was his employer under the FLSA, his claims against Trinity Health must be dismissed.

## II.   Dombal Does Not Plausibly Allege Standing To Sue Trinity Health For Unpaid Wages.

### A.   A complaint that fails to plead an injury-in-fact traceable to the defendant's conduct must be dismissed.

Absent standing, Dombal cannot proceed with his claims in this Court. To establish standing, the plaintiff must show: (1) "an injury-in-fact"; (2) that is "fairly traceable" to the defendant's conduct; and (3) that "is likely, as opposed to merely speculative, that the injury will be redressed by a favorable judicial decision." *Parsons v. U.S. Dept. of Justice*, 801 F.3d 701, 710 (6th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). The plaintiff "bear[s] the burden of establishing standing and must 'clearly allege facts demonstrating each element.'" *Turaani v. Wray*, 440 F. Supp. 3d 733, 736 (E.D. Mich. 2020) (quoting *Parsons*, 801 F.3d at 710), *aff'd*, 988 F.3d 313 (6th Cir. 2021)).

Dombal must plausibly allege that he personally suffered an injury

29

traceable to some action by Trinity Health. The inclusion of collective allegations does not relieve him from this requirement. *See Warth v. Seldin*, 422 U.S. 490, 502 (1975). "[N]amed plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 n.6 (2016) (citation omitted). "The standing requirement is no different in a collective action suit." *Lucas v. BMS Enterprises*, No. 3:09-CV-2159-D, 2010 WL 2671305, at *3 (N.D. Tex. July 1, 2010) (FLSA collective action). And "[i]n a FLSA collective action, every defendant must have been the employer of at least one named plaintiff." *Davis v. Abington Mem'l Hosp.*, 817 F. Supp. 2d 556, 563 (E.D. Pa. 2011). So, when the only named plaintiff has no claim for unpaid wages, he cannot represent a collective as to that claim, and the associated putative collective claims should be dismissed, too.

### B.   Dombal fails to plausibly allege any injury caused by or traceable to Trinity Health.

Because the complaint fails to plausibly allege that Trinity Health "operates" Saint Francis Hospital or controls any terms or conditions of Dombal's employment, he cannot have suffered an injury in fact, and he

has no standing to sue. Here, Dombal has not plausibly alleged that he was employed by Trinity Health or economically dependent on Trinity Health. Once his conclusory joint employment claims are excised (as they should be), his alleged injury (unpaid wages) is not fairly traceable to Trinity Health's conduct. Dombal's alleged injury may eventually be traceable to Saint Francis Hospital, but that is irrelevant here. "When 'standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict,' the plaintiff must 'adduce facts showing that those choices have been or will be made in such a manner as to produce causation and permit redressability of injury.'" *Turaani*, 440 F. Supp. 3d at 737–38 (quoting *Lujan*, 504 U.S. at 562). Because Dombal has adduced no such facts— much less "clearly allege" them, *id*. at 736— his claims should be dismissed for lack of standing.

## III.   In The Alternative, The Court Should Dismiss Or Strike Dombal's Nationwide Collective Allegations.

### A.   Collective allegations must plausibly show a "strong likelihood" that other employees are similarly situated.

To survive dismissal, a plaintiff asserting a collective action under

the FLSA must plead facts that plausibly suggest the existence of a common unlawful policy affecting both the named plaintiff and the proposed collective. Mere assertions of similarity or shared employer status are not enough. Rather, a plaintiff must demonstrate a "strong likelihood" that other employees are similarly situated. *Clark v. A&L Homecare and Training Center, LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023). Although "the standard dictated in *Clark* is an evidentiary standard, not a pleading standard" a plaintiff "merely alleging that they are similarly situated to the proposed group of employees does not make it so. *Clark* requires more than that." *Woods v. First Transit, Inc.,* No. 1:21-CV-739, 2023 WL 6290781 (N.D. Ohio Sept. 27, 2023). After all, it is the evidentiary standard that drives what facts must be pleaded. *See Iqbal*, 556 U.S. at 679.

Courts assessing the facial sufficiency of mass-action allegations apply *Iqbal's* "plausibility" test to analyze whether a plaintiff's proposed collective meets the certification standard. *See Potter v. Cardinal Health 200, LLC*, 381 F. Supp. 3d 729, 737 (E.D. Tex. 2019). Unlike a single-employee FLSA complaint, a collective-action complaint "survive[s] a motion to dismiss" by "creat[ing] a plausible entitlement to relief" *not*

32

*only* for the named plaintiff but also for the unnamed "putative class members." *Cavallaro v. UMass Mem'l Health Care, Inc.*, 971 F. Supp. 2d 139, 152 (D. Mass. 2013). A plaintiff must therefore present a "*factual basis* showing that there are similarly situated persons entitled to relief," which, at a minimum, must include details supporting a plausible inference that the plaintiff and others "'were victims of a common policy or plan that violated the law.'" *Id.* (emphasis added) (citation omitted).

### B. Dombal fails to plausibly plead any facts that show employees are similarly situated anywhere other than Saint Francis Hospital.

Here, Dombal's complaint fails to meet the pleading standard under *Iqbal* and *Twombly,* much less the higher standard under *Clark*. It contains no factual allegations about employment conditions at any facility other than his own, and he includes no non-conclusory allegations that Trinity Health jointly employed any of the proposed collective members. These are fatal deficiencies. Dombal seeks to represent a nationwide group of patient care staff across "93" or "101" hospitals across the nation, ECF No. 1, ¶¶ 6, 13, even though he and all opt-in plaintiffs worked exclusively at Saint Francis Hospital in Hartford, Connecticut. *Id.*, ¶¶ 11, 24, 46. Not surprisingly, the complaint contains

33

no factual allegations plausibly showing that Trinity Health jointly employed any of the employees at the 93 or 101 other hospitals. And he offers no factual allegations about employment conditions at any facility other than his own. Nor does he allege that Trinity Health jointly employed any of the proposed collective members. Instead, he relies on conclusory statements that Trinity Health "operates" these hospitals and "controlled" employment practices—without identifying specific policies, mechanisms of control, or factual nexus between Trinity Health and the hospitals. These allegations, too, fall short under *Iqbal* and *Twombly*, and the collective claims should be dismissed or stricken.

Courts strike or dismiss facially insufficient collective allegations as early as the pleading stage for the same reasons. *See*, *e.g.*, *Potter*, 381 F. Supp. 3d at 738 (dismissing collective claims because plaintiff failed to "plead a plausible claim for collective relief under the FLSA"); *Ladik v. Wal-Mart Stores, Inc.*, 291 F.R.D. 263, 269 (W.D. Wis. 2013) (granting same but in response to a Rule 12(f) motion to strike); *see also* Fed. R. Civ. P. 23(d)(1)(D) (courts may "require that the pleading be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly"). Because Dombal's complaint itself "make[s]

34

it clear" that collective "certification is inappropriate," this Court should strike the collective allegations at the outset and not "wait for a motion" for certification. *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829 (N.D. Ill. 2013) (first quote); *Stubbs v. McDonald's Corp.*, 224 F.R.D. 668, 674 (D. Kan. 2004) (second quote).

## CONCLUSION

Dombal has not alleged facts sufficient to plausibly show that Trinity Health was his employer under the FLSA. Nor does his complaint show any injury traceable to Trinity Health's conduct. His attempt to sue a Michigan-based company for alleged injuries arising from the conduct of a Connecticut-based entity—without including any specific facts that link either entity—fails under both the economic reality test and the joint-employer framework recognized in the Sixth Circuit and this Court.

Because Dombal lacks standing and has failed to state a claim upon which relief can be granted, this complaint should be dismissed in its entirety. In the alternative, the Court should dismiss or strike Dombal's nationwide collective allegations.

Dated: September 16, 2025          Respectfully submitted,

/s/*J.D. Tripoli*

35

J.D. Tripoli
Wisconsin Bar No. 1090023
jtripoli@littler.com
LITTLER MENDELSON, P.C.

833 E. Michigan Street, Ste. 900
Milwaukee, Wisconsin 53202
Telephone:  414.978.4604
Facsimile:  414.908.9293

William Liles
Texas Bar No. 24083395
wliles@littler.com
LITTLER MENDELSON, P.C.
1301 McKinney Street, Ste. 1900
Houston, Texas 77010
Telephone:  713.951.9400
Facsimile:  713.951.9212

Michelle S. Walsh (P83790)
mswalsh@littler.com
LITTLER MENDELSON, P.C.
500 Woodward Ave., Suite 2600
Detroit, Michigan  48226
Telephone:  612.630.1000
Fax No.:  313.446.6405

***Attorneys for Defendant
Trinity Health Corporation***